FILED

2019 AUG 27 AM 9: 22

SUPERIOR COURT
OF GUAM

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| **GUAM POLICE DEPARTMENT MAJOR FRED M. CHARGUALAF,** ) ) ) ) ) | Case No. SP0007-18 |
| Petitioner, ) ) ) | **DECISION AND ORDER** |
| v. ) ) ) | |
| **GOVERNMENT OF GUAM RETIREMENT FUND,** ) ) ) | |
| Respondent. ) ) | |

## INTRODUCTION

This matter came before the Honorable Alberto C. Lamorena, III on April 29, 2019 for a status hearing in the above-captioned matter. Petitioner Fred Chargualaf ("Petitioner") is represented by Attorney Joshua Wash. Respondent Government of Guam Retirement Fund ("GGRF") is represented by Attorneys Vincent Camacho and Joanne Grimes. At the hearing the parties agreed to submit the matter to the Court on the briefs. After considering the filings of the parties, and the applicable law, the Court now issues its Decision and Order denying the petition.

## BACKGROUND

Petitioner has been employed with the Government of Guam since 1984 and is currently enrolled in the GGRF's Defined Benefit Plan ("DB Plan"). (Verified Petition at 2, Jan. 26,

2018). In addition to his base pay, the Petitioner received a number of lump-sum payments for merit and back pay owed to him as a result of mandated pay increases by the 29th Guam Legislature. *Id.*; (Decl. Joshua Walsh, Exhibit B at 2, Aug. 31, 2018). In 2012, Petitioner received a merit bonus in the amount of $3,207.37 for exemplary performance in 1999 and 2001. (Decl. Joshua Walsh, Exhibit B at 2, 3). In 2013, the Petitioner received lump-sum payments of $22,848.63 for non-Law Enforcement Officer ("LEO") services performed from 2000 to 2008 and $23,886.28 for LEO services performed from 2009 to 2013. *Id.* The Petitioner also received payments of $23,886.28 and $2,894.38 in 2014 and 2015 respectively for LEO services performed between 2009 and 2013. *Id.*

On April 19, 2017 the GGRF acknowledged receipt of the Petitioner's Petition for Declaratory Ruling pursuant to 2 GAR § 3101(5). (Answering Brief, Exhibit 1 at 1, Sep. 28, 2018). In his Petition, he asked the GGRF to interpret its enabling statute in a manner that would reflect his three highest annual salaries as the same amounts recorded on in his W-2GUs for the years 2013-2015. *Id.* at 2-3; (Decl. Joshua Walsh, Exhibit A). The GGRF issued a decision rejecting the Petitioner's request. (Decl. Joshua Walsh, Exhibit B) (Board of Director's Decision issued Dec. 27, 2017). The GGRF asserted that, under its historical interpretation of the DB Plan statute, 4 GCA § 8100 *et seq.*, the lump sum payments that the Petitioner received for back pay and merit could not be attributed to the year they were received, but must be allocated to the years the services were performed. *Id.* Accordingly, the GGRF denied the Petitioner's request and instead issued an estimated breakdown of the Petitioner's annual salary adjusting the amounts to apply back pay and merit pay to reflect the amounts that would have been owed to him in prior years. *Id.* at 3.

The Petitioner subsequently filed a Verified Petition for Writ of Mandate. (Verified Petition). The GGRF filed an answer and then a First Amended Answer. (Verified Answer, Apr. 17, 2018); (First Amend. Answer, Apr. 20, 2018). In June 2018, the Honorable Arthur R. Barcinas ordered briefing on the matter. (Minute Entry, Jun. 26, 2018). The Petitioner filed an opening brief, to which the GGRF filed an answering brief. (Opening Brief, Aug. 31, 2018); (Answering Brief). The Petitioner filed a reply. (Reply, Oct. 12, 2018). In November 2018, Judge Barcinas disqualified himself from the matter. (Disqualification 7 GCA 6106 Mem., Nov. 21, 2018). From November 2018 to February 2019 four other Judges would disqualify themselves, until the matter was eventually assigned to this Court. (Notice of Judge Assignment (6), Feb. 21, 2019).

An initial hearing was set for April 8, 2019, however the parties requested a new hearing date. (Stip. & Request to Set a New Hearing Date, Mar. 15, 2019). The Court rescheduled the status hearing to April 29, 2019. (Minute Entry, Apr. 29, 2019). At the hearing the parties agreed to submit the matter on the briefs previously filed, and the Court took the matter under advisement. *Id.*

## DISCUSSION

In his Petition, the Petitioner asks this Court to overturn the GGRF's December 27, 2017 Decision or alternatively, find that the Decision is procedurally infirm, and remand the matter back to the administrative level for a hearing and additional discovery. (Verified Petition at 4); (Opening Brief at 3). The GGRF requests that the Court affirm its Decision. (Answering Brief at 19).

**a. Petitioner was not entitled to a hearing and was not prejudiced by the delay in the GGRF issuing its Decision.**

Petitioner contends that the GGRF has violated his due process rights by failing to hold a hearing pursuant to the Administrative Adjudication Law, 5 GCA § 9200 *et seq.*, on his Petition for Declarative Ruling and also by failing to issue its Decision within the time limit prescribed by statute. (Opening Brief at 3). The Court disagrees.

The Administrative Adjudication Law ("AAL") specifically outlines when its general provisions are triggered:

> The procedure of any agency shall be conducted pursuant to the provisions of this Chapter in any proceeding before an agency in which legal rights, duties or privileges of specific parties are required by law to be determined after an agency hearing.

5 GCA § 9200. The Supreme Court of Guam has already held that unless an agency is required by law to hold a hearing, then the AAL Article 2 provisions do not apply to agency procedures. *Guam Fed. Teachers ex rel. Rector v. Perez*, 2005 Guam 25 ¶ 36. The statute outlining the procedures for Declaratory Rulings by the GGRF do not expressly state, nor contemplate that the agency will hold a hearing on any member's petition. 2 GAR § 3101(5). Accordingly, we find that the Petitioner was not prejudiced by a lack of hearing on his Petition for Declaratory Ruling.

The Petitioner also asserts that this Court should void the GGRF's Decision because it was not issued within the time limit prescribed by Guam's Administrative Rules and Regulations. (Opening Brief at 3). Under the statute, the GGRF must issue a decision on a Petition for Declaratory Ruling within ninety (90) days. 2 GAR § 3101(5)(d). There can be no question that the Decision was untimely, having been issued two hundred fifty-two (252) days after the GGRF received the Petition. (Answering Brief, Exhibit 1 at 1) (dated April 19, 2018);

(Verified Petition, Exhibit B at 1) (dated December 27, 2018). However, the Court finds that the Petitioner has not been prejudiced by this delay other than the extra time he was required to wait for the Decision. GGRF's delay did not affect the Petitioner's annuity benefits, as he is not currently retired and receiving such benefits. (*See* Verified Petition at 2 ¶ 6); (*See also* First Amend Answer at 2 ¶ 3). In addition, the delay has not harmed the Petitioner's right to appeal the GGRF's Decision, nor does the Petitioner allege that the delay caused him any particular harm to other substantive legal rights. (*See* Opening Brief at 3); (Reply at 5). Accordingly, the Court declines to void the GGRF's Decision for untimeliness.

**b. The GGRF's interpretation is not entitled to Chevron Deference.**

The main question before this Court on appeal is a matter of statutory interpretation. Specifically, the parties disagree as to how retroactive pay and merit bonuses affect a member's annual salary for annuity benefit computation. 4 GCA 8122(a). Petitioner contends that all retroactive pay must be credited to the year in which the member actually received that payment. (Opening Brief at 4-5). The GGRF asserts that retroactive pay is to be considered as part of the annual salary for the prior year(s) that payment was owed or credited to and not the actual year in which the employee received that payment. (Answering Brief at 5, 8-9).

As an initial matter, this Court must determine whether the GGRF is entitled to deference under *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984). The Supreme Court of Guam has recently clarified that many of its prior decisions addressing agency deference did not actually apply *Chevron* deference, but a related deference doctrine under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). *Port Authority of Guam v. Civil Service Commission*, 2018 Guam 9 ¶ 10. *Chevron* doctrine only applies where the legislature "understood that the ambiguity would be resolved, first and foremost, by the agency, and

desired the agency (rather than the courts) to possess whatever degree of discretion the ambiguity allows." *See id.* ¶ 8. Generally, "'interpretive rules' issued by an agency enjoy no *Chevron* status as a class." *Id.* (quoting *United States v. Mead Corp.*, 533 U.S. 218, 232 (2001)). Only where the Legislature has expressly granted the agency that level of discretion, and where the statute is ambiguous, will the agency's interpretation be afforded deference for "any permissible construction of the statute." *Id.* at ¶¶ 7-8.

In contrast, under *Skidmore* deference an agency interpretation is "eligible to claim respect according to its persuasiveness." *See Port Authority of Guam*, 2018 Guam 9 ¶ 13-14 (quoting *Mead Corp.*, 533 U.S. at 221). While the Court should lend great weight to an agency's interpretation, ultimately the court has the final responsibility to interpret the law. *Id.* If *Skidmore* deference applies then "an agency's interpretation of statute is a question of law reviewed *de novo.*" *Carlson v. Guam Telephone Authority*, 2002 Guam 15 ¶ 17.

The GGRF urges this Court to apply *Chevron*, stating that the Legislature has given it significant authority. . . in carrying out [its] duties as mandated by [4 GCA §] 8139, 8139.1 and 8142." (Answering Brief at 7-8). The Court, however, is not convinced that the Legislature intended to give discretion to the GGRF in interpreting the definitions outlined in GCA § 8104.

Section 8139 and 8139.1 grants the GGRF authority to run its day to day activities and accept grants and control the manner in which it invests member contributions in order to keep the fund sustainable. *See* 4 GCA § 8139, 8139.1. Section 8142 gives the GGRF authority to promulgate its own regulations and rules. 4 GCA § 8142. These Sections do not appear to be grant of authority by the legislature for the GGRF to interpret ambiguities in the terms defined in Section 8104, but merely the authorized the GGRF to freely control its operations and granted latitude in how it would ensure the fund remains solvent. In contrast, the language of

Section 8104 expressly states that the terms described shall have the meaning provided, unless context requires otherwise. 4 GCA § 8104. In addition, it appears that the GGRF is required to submit to the Legislature any recommendations or amendments that might need to protect the fund's actuarial soundness. 4 GCA § 8101.1(b).

Despite the GGRF's insistence that it was given broad authority to interpret the terms described in Section 8104, the Court is convinced otherwise. It is clear from the plain language of Section 8104 that the Legislature intended to set specific definitions which would be used by the board in determining annuity calculations. 4 GCA § 8104 ("unless a different meaning is clearly indicated by the context, [these words and phrases] shall have the following meanings."). If the GGRF found that a certain terms as defined could detrimentally affect the fund by their ambiguity, GGRF was required to submit to the Legislature any amendments that were necessary to provide clarity and keep the fund actuarially sound. 8 GCA § 8101.1(b). Accordingly, the Court finds that the Legislature intended Section 8104 to be conclusive as to the meaning of certain terms and phrases within the statute, and that the Legislature intended that it would have the final word on the matter, but permit the GGRF to recommend any necessary amendments. Accordingly, the Court finds that the GGRF's interpretation is not entitled to *Chevron* deference, and we proceed with a *de novo* review of the statute to assess its meaning. *Port Authority of Guam*, 2018 Guam 9 ¶¶ 10, 13-14; *Carlson*, 2002 Guam 15 ¶ 17.

**c. Petitioner's interpretation of the statute would lead to absurd results and frustrate the statute.**

Statutory Interpretation always begins with the language of the statute. *Data Management Resources, LLC v. OPA*, 2013 Guam 27 ¶ 17. If the language of the statute is plain and unambiguous, the Court's analysis is complete and the plain language governs. *See Aguon v. Gutierrez*, 2002 Guam 14 ¶ 6; *Attorney General of Guam v. Gutierrez*, 2011 Guam 10 ¶ 26.

However, if the statute is silent or ambiguous, then the court may defer to the agency's reasonable interpretation. *Ada v. Guam Telephone Authority*, 1999 Guam 10 ¶ 10. In determining whether an ambiguity exists, a court should not read the language of the statute in isolation, but must examine it within the context of the statute as a whole. *Aguon*, 2002 Guam 14 ¶¶ 6, 9.

A member's retirement annuity is calculated based on his or her average annual salary while in the employment of the Government of Guam. 4 GCA § 8122(a). Average annual salary is defined as "the average of the three (3) highest annual salaries received by a member during his years of credited service or Six Thousand Dollars ($6,000) whichever is greater." 4 GCA § 8104(j). The Section defines salary as "the amount received by an employee for service." 4 GCA § 8104(i). Service means "actual employment by the Government as an employee for salary or compensation or service otherwise creditable" 4 GCA § 8104. Expanding the definition of actual annual salary using the other definitions provided by the statute, average annual salary means: the average of the three (3) highest annual amounts received by an employee for actual employment by the Government as an employee for salary or compensation during his years of credited service or Six Thousand Dollars ($6,000) whichever is greater.

At the outset, it appears that the plain language of the statutes read as a whole favors the Petitioner's interpretation. The language of the statute, on its face, specifically states that average annual salary is the three highest annual amounts received by an employee during his or her years of credited service. There are no qualifiers as to amounts that should be excluded, and a plain reading suggests that any and all amounts received in an annum count. Generally, plain language of a statute controls absent clear legislative intent to the contrary. *Sumitomo Const.*

*Co. Ltd. V. Government of Guam*, 2001 Guam 23 ¶ 17. However, the Court may ignore the deference normally afforded to the plain language of a statute where the results would lead to absurd or impractical consequences, untenable distinctions, or unreasonable results. *Id.* "Absurdity may result when the legislature drafts a statute using language that is broader and more sweeping than that which the legislature intended."

Reading Sections 8122(a) and 8104(e), (i) and (j) in the manner the Petitioner request would conflict with other Sections of the statute and lead to absurdity in the statute's application. Determining that back pay should be applied to the year in which it was received conflicts with the Legislatures' mandate that the GGRF manage the fund in compliance with to the Internal Revenue Code ("IRC") Section 401(a), 26 U.S.C. § 401(a). 4 GCA § 8101.2(a) and (b). Specifically the Guam Legislature has mandated that:

> The Fund shall maintain its status as a tax-qualified governmental pension plan under Section 401(a) of the Code. As used in this Article, "Code" means the United States Internal Revenue Code of 1986, as amended, applicable to Guam under the mirror provisions of the Guam Territorial Income Tax Code.

> The Fund shall be administered in accordance with the requirements of Section 401(a)(1), (2), (7), (8), (9), (16), (17), (25), (31), and (37) of the Code, as such provisions, as amended, apply to a governmental pension plan sponsored by the government of Guam. Without limiting the generality of the foregoing and notwithstanding any other provision of this Article to the contrary.

*Id.* The statute continues, referencing Section 401(a)(16) of the IRC which places certain limits on benefits paid from and contributions paid to the fund. 4 GCA § 8101.2(5). As part of the computation on these limits, the statute references Section 415 compensation, which is generally defined as "the member's Box 1, W-2 earnings for the year, modified to include any pre-tax elective deferrals pursuant to Sections 403(b), 457(b), 125, or 132(f)(4) of the Code." 4 GCA § 8101.2(5)(C). The statute further enumerates specific types of pay included and excluded from Section 415 compensation, and specifically addresses back pay:

Finally, Section 415 compensation includes payments awarded by an administrative agency, or court, or pursuant to a bona fide agreement by the government to compensate a member for lost wages. **Such payments for back pay are treated as Section 415 compensation for the limitation year to which the back pay relates** to the extent the back pay represents wages and compensation that would otherwise be included as Section 415 compensation under this Subsection.

*Id.* (emphasis added). This passage states that retroactive pay for back wages should be treated as compensation in the years in which the back pay relates, not in the year the back pay was received. *Id.* It is clear the Legislature intended the fund to be managed in manner applicable to its federal counterparts and the Legislature intended the provisions of the IRC to be controlling on the GGRF's management of the fund. The Petitioner's interpretation of how back pay is to be credited is in direct conflict with how the IRC handles back payment. To rule in favor of the Petitioner would result in a reading of the statute that frustrates the Legislature's express mandate that the fund be administered in compliance with the IRC and could potentially damage the fund's status as a tax-qualified governmental pension plan.

Additionally, the application of the statute under the Petitioner's interpretation would lead to absurd and unfair results in applying the annuity calculation to members. For instance, under the Petitioner's reading of the statute, two employees with the same job title and pay step could receive greatly differing annuity payments if one employee is awarded back pay due to improper termination. (*See* Answering Brief at 10). Also, if payments of retroactive pay must be credited in the year they were received, the result would cause huge problems for recently retired or soon to be retired members, should the Legislature decide to mandate a pay increase again resulting in back pay owed—a similar scenario to the Petitioner's own case in this matter. (Verified Petition at 2 ¶ 8) ("Pursuant to pay increase by the 29th Guam Legislature, Major Chargualaf received lump payments as retroactive compensation for work that was previously

unpaid."). Under the Petitioner's scheme, a member would not see an increase in his or her annuity if, at the time he or she received the back pay owed, he or she was already retired because the payment was not received "during his [or her] years of credited service." 4 GCA § 8104(j). Such a result frustrates the reason for the fund's existence which is to "provide retirement annuities and other benefits for the employees of the government of Guam who become aged or otherwise incapacitated . . . with the objective of encouraging qualified personnel to enter and remain in the service of the Government, thus effecting economy and efficiency in the administration of the Government." 4 GCA § 8101.2. The Petitioner's interpretation would result in harm to and unfair results between similarly situated members of the fund for reasons that are neither uniform nor anticipatable.

While the plain language of the provisions in Section 8104 and 8122(a), taken as a whole, can be interpreted in a manner the Petitioner suggest, the Court finds that such an interpretation will ultimately frustrate the intent of the Legislature, and lead to absurd results in the statute's application. As such, the Court declines to hold that the terms as defined in Section 8104 were meant to be interpreted in the manner that the Petitioner requests. The Court further finds that the GGRF's interpretation of the statute is amenable to the statue's Legislative purpose and is consistent with the Legislature's intent that the fund be administered consistent with the provisions of the IRC. 4 GCA § 8101.2(a) and (b). Accordingly, the Court will deny the Petitioner's Verified Petition for Writ of Mandate.

///

///

## CONCLUSION

For the reasons stated above, the Petitioner's Verified Petition for Writ of Mandate is hereby **DENIED**. The Respondent's Decision issued December 27, 2017 is **AFFIRMED**.

**IT IS SO ORDERED** on this 27th day of August, 2019.



_____
**HONORABLE ALBERTO C. LAMORENA III**
**Presiding Judge, Superior Court of Guam**

**SERVICE VIA COURT BOX**

I acknowledge that a copy of the original hereto was placed in the court box of:

- Civille & Tang
- Camacho Calvo Law Group

Date: 8-27-19  Time: 9:25

*Linda M. Perez*
Deputy Clerk, Superior Court of Guam